Next case, 5-15-0437, Cashner v. Speed Lube, LLC. Counsel for the appellant, you may proceed. Please state your name for the record. Good morning, Your Honor. Just may it please the court, my name is Francis Duda. I represent Charles Cashner in this appeal. There's a second appeal that will follow this on another issue that my partner is going to address dealing with the land that our firm has asserted on legal fees. Your Honor, this appeal deals with Judge Knight's order dated February 20, 2015, in which the court dismissed Caps 2 and 3 of the petition for the complaint that was pending in Vaughn County. We believe the court erred in entering that order. We believe that Mr. Cashner has standing to assert the claims that were dismissed. Those two claims involve the application of the Illinois Limited Liability Act with respect to his interest in Speed Lube, LLC, a going concern which is located in Vaughn County. The judge... Seems like Vaughn County is popular this week. Yes, Vaughn County is popular. Your Honor, Judge Knight addressed the motion to dismiss twice. At the time we filed the original petition, three counts, Speed Lube moved to dismiss Count 1 and remanded or forwarded for arbitration, which happened. Mr. Cashner was successful in that matter. A judgment was entered by Judge Vaughn for $140,000. You'll hear more about that later. But this, when the case came back, there was a companion lawsuit between two of the members of the LLC, Douglas Draper and Charles Cashner, pending in the Jefferson County Circuit Court in Missouri. Judge Knight correctly decided to stay all proceedings in the Illinois case pending the outcome of the Missouri decision. In his original order, in which he denied the motion to dismiss, he said the court concurs the defendant's argument that a favorable ruling in the pending Missouri case might be outcome determinative, emphasis added, of the issues at bar in Counts 2 and 3. So the court entered a stay order and we waited for the decision of Judge Cordona in the Jefferson County Circuit Court. That was a private dispute between Mr. Draper and Mr. Cashner. I think it's interesting, and perhaps of some interest, how the dispute occurred. Mr. Draper, a very wealthy man and a original member manager of Speed Loop, was very close to Mr. Cashner. They'd had years of successful relationship and business centered around Speed Loop and other business matters. Mr. Mr. Draper told Mr. Cashner, I've got an extra million dollars, see what you can do with it. Mr. Cashner prepared a set of loan documents, a loan secured by interest that he put up as additional security for the loan, including a security interest in Speed Loop. That was directly contrary to the operating agreement in Speed Loop. Speed Loop's operating agreement prohibits the pledge of a security interest in the LLC, but Mr. Draper and Mr. Cashner were colleagues, friends, and had been successful together, and I would say they didn't think anything of it because they expected to do very well in their investment of the million dollars. The million dollars was put in the stock market, and within the testimony of the Jefferson County Court was 90 to 100 days, the value had plummeted, it was worth practically nothing. All invested in a single stock. Mr. Draper, you would think, would have justifiably been upset. After all, he put up all the money. So what he told Mr. Cashner was, here, I'll give you another $250,000 and see if you can recoup some of the loss, which he did. They signed additional loan documents, pledges of security interest in Speed Loop violating the operating agreement, and that money was lost as well. In the private lawsuit between those two parties in Jefferson County, Mr. Cashner recovered a substantial judgment for default on the notice. In addition, the court held that the security interest, notwithstanding the terms of the agreement, gave Mr. Draper an additional security interest in Mr. Cashner's 9.5% interest in Speed Loop. Well, the only other point I'd like to make about the Jefferson County decision, which I think is critical for a determination here, is that Speed Loop LLC was not a party to the Jefferson County dispute. They were dismissed from the action and were not a party when the judgment was entered. Also, Plant Maintenance Services LLC, another LLC that's in the consolidated case before Judge Bond, was not a party to the Missouri case either. When the decision was entered on motion of the parties again to dismiss on the basis that they were an owner of an interest in Speed Loop, the judge determined that he had no standing to pursue his claims for liquidation of his interest in Speed Loop or a claim, which is very important here, for declaratory relief. Now, on the issue of standing, we've cited the Greer case, and in it, the court says elementary justice requires that one who is hurt by illegal action should have a remedy. The central principle that grows out of this is very simple. One who is adversely affected by governmental action has standing to challenge its legality, and one who is not adversely affected, in fact, lacks standing. There's no question, of course, that the decision in Jefferson County resolved the private loan dispute between Draper and Kachner, but it didn't. Didn't it also address the ownership interest in Speed Loop? It did, Your Honor, and it came up with a unique remedy. You won't find it in any case in either Missouri or Illinois, or in the last time we searched, in the United States, called a reverse charging order. Judge Cordona said Mr. Kachner failed to read the documents that Mr. Draper signed relating to the LLC to him, and Mr. Draper said, I didn't read them, and I didn't know what I signed. So, and Judge Cordona said Kachner defrauded Draper into signing the loan documents and loaning the money for this investment, but the court said, we're also giving you a spring on your interest in the LLC. He called it a reverse charging order, and he said, while we're transferring an interest to Draper, the 9.5% interest, every penny paid over to Draper from that investment. Now, I submit to the court that that spring should be sufficient alone to justify standing in the trial court in, in Bond County. You can't have a right to the income interest and not have some financial or ownership or standing to pursue your claims with respect to your rights overall under the operating agreement. I wanted to just mention one other thing on Greer. The court said, we thus adhere to the principle that standing in Illinois requires only some entry, in fact, to a legally recognizable interest in the context of an action for declaratory relief, and that's what we've asked for down below. There must be an actual controversy between adverse parties with the party requesting the declaration possessing some personal claim, status, or right, which is capable of being affected by the grant of such relief. Now, I can, I can tell you this, not in the record, of course, but, um, there is no accounting for the interest that Mr. Cashner had in Speedleaf. There is no recognition of this very substantial and valuable interest. There's no reporting from the, from Speedleaf relating to this interest. And so we've got a situation where he has no remedy unless this court remands the case and lets the matter proceed in the normal course to liquidate his interest under the statute. One other point I think is very important. In the, in the consolidated case below, the companion suit involving plank maintenance services is another 9.5% interest that Mr. Cashner had in the case. And so we submit to the court that our client has an interest, a very valuable interest, that there are statutes that govern how he should have that interest treated, that his interest ought properly to be, uh, liquidated. And you heard a case earlier this morning about valuation of a limited liability company and how that's done. Ultimately, that would have to be done. And those interests then would be, would be, uh, evaluated and straightened out in the normal course of events. Now, this is not an attack on the Jefferson County decision or the Missouri Court of Appeals decision, even though we didn't agree with it. But the fact of the matter is, will this court allow my client to have his interest stripped away from him without compensation, without any recognition of this valuable interest, and without even a hearing in court, we submit that the matter ought to be remanded for further proceedings, unless the court has other questions, I will rest at the moment. Thank you, counsel. We'll have an opportunity to reply. Counsel for the appellee. Good morning. May it please the court, if you do, David Antignoli, representing the Appeal, who are Douglas Draper, Steven Dugan, and Robert Harbison. At the outset, I would like to take issue with the final, uh, the concluding statement of Mr. Duda. My friend says that his client will be deprived of some interest without due process, without notice in hearing. But the fact of the matter is, your honor, is the, the appellant was deprived of his interest after a full blown trial in Jefferson County, Missouri, in which the circuit court said he no longer has any interest in speed loop. His nine and a half percent interest in speed loop, the very same interest he belonged to my client, Douglas Draper. And after that case was fully and fairly litigated in the circuit court of Jefferson County, Missouri, Mr. Tashner appealed. He raised the same issues that he discussed earlier, uh, discussed in his argument this morning about, uh, reverse charging order was unprecedented. And, uh, Draper shouldn't have done this. Draper shouldn't have done that. There was an indispensable party that was missing. The Missouri court of appeals rejected each and every one of those arguments. Let me ask you this, counsel. What about his argument about the reverse charging order giving him a foot in the door in this court as to standing? And secondly, what about plant maintenance? Let me address plant maintenance first. Plant maintenance has nothing to do with the cause of action that Judge Knight dismissed. There is another component or another claim pending between the same parties in Bond County that remains pending involving plant maintenance. And Mr. Tashner has every right to pursue that claim. This case involving speed loop is separate, has nothing to do with the plant maintenance services case. The second point that you raised was addressed by the Missouri court of appeals. The quote, interest that Mr. Tashner claims is not an interest at all. It is a right of set off against Draper's judgment. And the court of appeals in Missouri told Mr. Tashner how he can enforce it. There is a specific procedure under Missouri law that says if you claim that money should be applied to the satisfaction of the judgment, you can apply to the circuit court that entered the judgment to appropriately require a satisfaction. Now, if Mr. Tashner is concerned about his right of set off, all he has to do is on an annual basis, ask Mr. Draper for an IRS schedule K-1 form, which will tell Mr. Tashner exactly what, if anything, Draper has received on account of the interest that he was awarded in the speed loop litigation. And if Mr. Draper refuses to provide that schedule K-1, then Mr. Tashner needs to go to the circuit court of Jefferson County, Missouri, and compel the production of that documentation. But what he's asking this court to do is just to forget about the fact that the courts have stripped him of his membership interest in speed loop. And in fact, in so doing, the circuit court of Jefferson County, Missouri, said it would be inherently unjust to allow him to retain any interest in speed loop. Now, notwithstanding the fact that that interest has been stripped away, he wants to continue to enforce it through the back door. That shouldn't be permitted. And I think the way to analyze this, Your Honors, is to look at the complaint that was pending in Bond County when Judge Knight addressed this. The complaint filed by Kashner consisted of two counts. Count one, or count, well, count one was already discussed, but the two counts that are at issue here, the first one asked for a declaratory judgment asking the court to recognize the nine and a half percent interest that Kashner claimed in speed loop. And didn't the circuit court enter a stay order pending the outcome of the Missouri litigation? Yes. And the reason that the court did that, it was very prudent because that nine and a half percent interest was being litigated in Jefferson County, Missouri. And at the conclusion of that litigation, when Judge Knight was presented with a judgment that says that no nine and a half percent interest no longer belongs to Mr. Kashner, it would have been impossible for Judge Knight to declare that that interest should be recognized. The judgment of the Missouri circuit court deprived Kashner of the very interest, ownership interest that he was seeking to enforce in the declaratory judgment decision. The other aspect of the case that was dismissed was Kashner's request to dissolve speed loop. You can obtain dissolution of an LLC only if you own a membership interest or a distributional interest. That is a statutory condition precedent for the remedy of dissolution. According to the Missouri judgment, Kashner was no longer a member of speed loop, no longer had any ownership interest in it whatsoever. So Judge Knight, likewise, couldn't grant any relief under count, the final count of Kashner's complaint. Now, to say that there is a standing means there's some dispute between the parties. Well, that dispute has to be focused into some cause of action and the case law. And I would refer the court to the. I believe it's the Harris case, which is cited at page 12 of our brief, is almost right on point. In Harris, we've got a plaintiff property owner who's filed a quiet title action. He is lawsuit is premised on the fact that he owns the subject property and he wants the court to quiet title to dispose of some adverse claim. Well, during the pendency of the case, the plaintiff deeded that interest to a third party. At that point, the appellate court held having conveyed the very property interest that he was hoping to protect in the quiet title action. The plaintiff no longer has standing to maintain the action. The same situation we have here. We've got Mr. Kashner who went to court saying, I want Judge Knight, I want you to declare that I have nine and a half percent interest in this lawsuit. Well, thereafter, the Missouri, the Missouri Court of Appeals and the circuit court of Jefferson County said, no, you don't have a nine and a half percent interest. So Judge Knight was in no position to reverse an outcome that had been ordained by a court of competent jurisdiction in Missouri. Another case that we've cited along with the Harris case involves, again, a comparable situation, Daley versus Smith. It's at page 14 of our brief. The, that was a situation where a partner in a partnership said, I want an accountant. The defendant said, no, you don't have any standing because before you filed your petition, you may have been a partner before, but before you filed your petition for accounting, you went into a bankruptcy case. As a result of that bankruptcy case, you lost your partnership interest. So you no longer have standing to assert the rights of a partner in a partnership dissolution case. It's exactly the situation we have here. Mr. Cashner in Bond County said, I claim the rights of a member of Speed Loop. For him to obtain any relief in the circuit court of Bond County, he had to prove that he had that ownership interest in Speed Loop, the predicate of the claimed rights. The Missouri Court of Appeals, affirming unanimously a judgment of the circuit court of Jefferson County, Missouri, said, you don't own any interest in Speed Loop, Mr. Cashner. When that order was entered and affirmed on appeal, whatever interest Cashner had at the beginning of this case disappeared. Judge Knight properly decided that he was not in a position to act as a reviewing court and go through and undermine the result achieved by the Missouri litigation. For those reasons, Your Honor, we ask that the judgment of Bond County be affirmed. Thank you, counsel. Briefly, Your Honor, I think it's important to make sure that any order of this court very clearly indicates that all issues relating to plant maintenance services remain pending in Bond County. Those cases were consolidated together, and in the judge's dismissal of the Speed Loop case, it is a consolidated case. So it's very important for our purposes that there be no question about that. For example, we were told, well, I won't get into that. On the question of we're not, if you think about it, we have an ongoing interest in Speed Loop relating to Cashner's 9.5% interest are to be credited against the judgment. There's no way to enforce that. Let me get to this plant maintenance issue again. You seem to have two totally different positions about where we are with plant maintenance. You're saying it's consolidated. Counsel is saying that it's not. How will we resolve this basic issue? What should we look for in the record to settle that? Well, there is an order, and I'll make it available to the clerk, where Judge Knight consolidated the two cases, as he stated, for all purposes, for all purposes. And that consolidated order still is outstanding and not modified. In his order dismissing Speed Loop, he doesn't address one way or the other the other consolidated case. He doesn't mention it in his order, but the two cases were consolidated together. They raise exactly, I mean, they raise the same issues under the operating agreements. They're two separate operating agreements. So my only point is, it's very clear that the Missouri case does not address anybody's interest in plant maintenance services. Plant maintenance was not a party to that action, and neither was Speed Loop. And consequently, it's important to remand the case for a full amplification of all of the party's rights with respect to both limited liability companies. Otherwise, we don't have clarity about the rights of the parties. For example, if Judge Knight states, as counsel indicates, well, Cashner's interest in Speed Loop was transferred to Draper, all right, under the Illinois statute, that calls for a appraisal and a payment. And that amount would be used to reduce the amount of the judgment. Those things have to be addressed under the Limited Liability Act statute. So I can't make it, make symmetry out of it. But one thing's clear, this court in Illinois has to guard what happens under its own statutes, under the Limited Liability Act statutes. And the proper way to do that is to remand the case for further proceedings in that regard. It may end up that the trial court determines, well, now Draper obtained a 9.5% interest, and the value of that interest was, as we would say, more than a million dollars. And therefore, that amount either ought to reduce the judgment or not. Keep in mind, Your Honor, no meetings have been disclosed. No redistribution has occurred, all in violation of the operating agreements. In other words, these transfers have occurred without all of the members of the LLC agreeing to them. The idea by Mr. Hancock-Nolly that we can constantly search for payments, well, maybe that's what Judge Knight will determine has to be done. I don't think so. If they're correct, if he's correct that Kastner's interest was liquidated, but then all of the money was liquidation, not a private transfer to two members of the LLC, that is, Draper got plant maintenance, and I'm sorry, Draper got standing and Dugan got plant maintenance. Thank you for your time. Thank you, counsel. Court will take the matter under advisement and issue a decision in due course.